## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRYAN EVANS, | : | |
| | : | |
| Petitioner, | : | |
| v. | : | Civil Action No. 16-818-LPS |
| | : | |
| CLAIRE DEMATTEIS, Commissioner, | : | |
| Delaware Department of Corrections,[1] | : | |
| DANA METZGER, Warden,[2] and | : | |
| and ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents. | : | |

| | | |
|---|---|---|
| ERIC HOWELL, | : | |
| | : | |
| Petitioner, | : | |
| v. | : | Civil Action No. 16-820-LPS |
| | : | |
| CLAIRE DEMATTEIS, Commissioner, | : | |
| Delaware Department of Corrections, | : | |
| ROBERT MAY, Warden,[3] and | : | |
| and ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents. | : | |

---

[1] Commissioner Claire DeMatteis has replaced former Commissioner Robert M. Coupe, who was an original party. *See* Fed. R. Civ. P. 11(d).

[2] Warden Dana Metzger has replaced former Warden David Pierce, who was an original party. *See* Fed. R. Civ. P. 11(d).

[3] Warden Robert May has replaced former Warden G.R. Johnson, who was an original party to the case. *See* Fed. R. Civ. P. 11(d).

KARAM MOSLEY,                :

                                    :

         Petitioner,           :

      v.                         :       Civil Action No. 16-823-LPS

                                      :

CLAIRE DEMATTEIS, Commissioner,    :

Delaware Department of Corrections,    :

ROBERT MAY, Warden, and       :

and ATTORNEY GENERAL OF THE    :

STATE OF DELAWARE,          :

                                      :

         Respondents.        :

---

JAMES MOSES,                 :

                                      :

         Petitioner,           :

      v.                         :       Civil Action No. 16-841-LPS

                                      :

CLAIRE DEMATTEIS, Commissioner,    :

Delaware Department of Corrections,    :

DANA METZGER, Warden, and    :

and ATTORNEY GENERAL OF THE    :

STATE OF DELAWARE,          :

                                      :

         Respondents.        :

---

ANTOINE J. JONES,          :

                                      :

         Petitioner,           :

      v.                         :       Civil Action No. 16-849-LPS

                                      :

CLAIRE DEMATTEIS, Commissioner,    :

Delaware Department of Corrections,    :

DANA METZGER, Warden, and    :

and ATTORNEY GENERAL OF THE    :

STATE OF DELAWARE,          :

                                      :

         Respondents.        :

## MEMORANDUM OPINION

James B. O'Neill, Office of Defense Services for the State of Delaware, Wilmington, Delaware.

Attorney for Petitioners Bryan Evans, Eric Howell, Karam Mosley, James Moses, and Antoine J. Jones.

Brian L. Arban, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.

Counsel for Respondents.

September 30, 2019
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are five separate but nearly-identical Applications For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petitions"). One Petition is filed by each of the following Petitioners: Bryan Evans ("Evans") (C.A. No. 16-818 D.I. 2); Eric Howell ("Howell") (C.A. No. 16-820); Karam Mosley ("Mosley") (C.A. No. 16-823); James Moses ("Moses") (C.A. No. 16-841); and Antoine J. Jones ("Jones") (C.A. No. 16-849).

Each of the Petitions raises the same two claims for relief arising from issues relating to an evidence scandal in the Office of the Chief Medical Examiner ("OCME").

The State has filed an Answer in opposition to each Petition, to which each Petitioner has filed Replies.

Having considered all of the briefing and other materials submitted, and having considered each Petition separately and individually, the Court will dismiss all of the Petitions and deny the relief requested.

## BACKGROUND

### A. Evans

On December 12, 2012, Evans pled guilty to delivery of cocaine. The Superior Court immediately sentenced Evans to twenty-five years at Level V incarceration, suspended after three years for six months at Level IV, followed by eighteen months of Level III probation. Evans did not file a direct appeal.

On March 18, 2013, Evans filed a motion for modification of sentence, which the Superior Court denied on April 9, 2013. Evans did not appeal that decision.

On May 8, 2014, Delaware's Office of Defense Services ("OPD") filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") on Evans' behalf. The Superior Court denied the motion on December 3, 2014. The Delaware

1

Supreme Court affirmed that decision on October 12, 2015. *See Aricidiacono v. State*, 125 A.3d 677 (Del. 2015).

On September 19, 2016, the OPD filed a § 2254 Petition on Evans' behalf, asserting that his lack of knowledge of the OCME evidence scandal was material to his decision to plead guilty and, therefore, his guilty plea was involuntary pursuant to *Brady v. United States*, 397 U.S. 742, 748 (1970). Evans also argues that the Delaware Supreme Court made unreasonable findings of fact during his post-conviction appeal regarding OCME misconduct. The State filed an Answer asserting that Evans' Petition should be dismissed as time-barred or, alternatively, because the Claims are meritless. Evans filed a Reply, arguing that his Petition is timely filed pursuant to § 2244(d)(1)(D), and that the Claims warrant habeas relief.

**B.     Howell**

On February 4, 2014, pursuant to a consolidated plea agreement, Howell pled guilty to aggravated possession of heroin in a tier two quantity. That same day, the Superior Court sentenced Howell as a habitual offender to twelve years of Level V incarceration. He did not file a direct appeal.

On April 28, 2014, Howell filed a motion to modify his sentence, which the Superior Court denied on May 5, 2014.

On May 7, 2014, OPD filed a Rule 61 motion on Howell's behalf. The Superior Court denied the motion on December 3, 2014. *See State v. Absher et al,* 2014 WL 7010788 (Del. Super. Ct. Dec. 3, 2014). The Delaware Supreme Court affirmed that decision on October 12, 2015. *See Aricidiacono v. State,* 125 A.3d 677 (Del. 2015).

On September 19, 2016, the OPD filed a § 2254 Petition on Howell's behalf, asserting the same Claims as already described above with respect to Evans' Petition. The State Answered with the same arguments it made in connection with Evans' Petition, to which Howell replied.

## C.   Mosley

On January 6, 2014, Mosley pled guilty to drug dealing (heroin – tier 2) as a lesser included offense. That same day, the Superior Court sentenced Mosley to ten years at Level V, suspended after six months for eighteen months of Level III supervision. He did not file a direct appeal.

On May 14, 2014, OPD filed a Rule 61 motion on Mosley's behalf. The Superior Court denied the motion on December 3, 2014. *See State v. Absher et al,* 2014 WL 7010788 (Del. Super. Ct. Dec. 3, 2014). The Delaware Supreme Court affirmed that decision on October 12, 2015. *See Aricidiacono v. State,* 125 A.3d 677 (Del. 2015).

On September 19, 2016, the OPD filed a timely § 2254 Petition on Mosley's behalf, asserting the same Claims as already described above with respect to Evans' Petition. The State Answered with the same arguments it made in connection with Evans' Petition (although the State does **not** argue that Mosley's Petition was untimely), to which Mosley replied.

## D.   Moses

On October 8, 2013, Moses pled guilty to drug dealing. On December 12, 2013, the Superior Court sentenced Moses as a habitual offender to five years at Level V incarceration, followed by twelve months of Level III probation. He did not file a direct appeal.

On April 30, 2014, OPD filed a Rule 61 motion on Moses' behalf. The Superior Court denied the motion on April 20, 2015, and denied his motion for reargument on June 17, 2015. *See State v. Anderson et al,* 2015 WL 2067158 (Del. Super. Ct. Apr. 20, 2015); *State v. Banks,* 2015 WL 4400130 (Del. Super. Ct. June 17, 2015). The Delaware Supreme Court affirmed that decision on December 9, 2015. *See Banks v. State,* 129 A.3d 881 (Table), 2015 WL 8481972 (Del. Dec. 9, 2015).

On September 21, 2016, the OPD filed a § 2254 Petition on Moses' behalf, asserting the same Claims as already described above with respect to Evans' Petition. The State Answered with the same arguments it made in connection with Evans' Petition, to which Moses replied.

3

### E.    Jones

On February 15, 2010, Jones pled guilty to delivery of cocaine. The Superior Court immediately sentenced Jones to fifteen years at Level V incarceration, suspended after eleven years for six months at Level IV, followed by one year of Level III probation. He did not file a direct appeal.

On May 10, 2010, Jones filed a motion for modification of sentence, which the Superior Court denied on May 21, 2010. Petitioner filed a second motion for modification of sentence on March 24, 2014, which the Superior Court granted in part, on April 8, 2014, limited to correcting a typographic error in the sentencing order.

On June 20, 2014, OPD filed a Rule 61 motion on Jones' behalf. The Superior Court denied the motion on April 20, 2015, and denied his motion for reargument on June 17, 2015. *See State v. Anderson et al,* 2015 WL 2067158 (Del. Super. Ct. Apr. 20, 2015); *State v. Banks,* 2015 WL 4400130 (Del. Super. Ct. June 17, 2015). The Delaware Supreme Court affirmed that decision December 9, 2015. *See Banks v. State,* 129 A.3d 881 (Table), 2015 WL 8481972 (Del. Dec. 9, 2015).

On September 21, 2016, the OPD filed a § 2254 Petition on Jones' behalf, asserting the same Claims as already described above with respect to Evans' Petition. The State Answered with the same arguments it made in connection with Evans' Petition, to which Jones replied.

### F.    OCME Criminal Investigation

The relevant information regarding the OCME evidence mishandling is set forth below:

> In February 2014, the Delaware State Police ("DSP") and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the OCME.

> The investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. One employee was accused of "dry labbing" (or declaring a test result

4

> without actually conducting a test of the evidence) in several cases. Although the investigation remains ongoing, to date, three OCME employees have been suspended (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired.
>
> There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.

*Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015).

## STANDARD OF REVIEW

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. *See* 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied;" as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011).

5

Finally, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *see also Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *see also Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## THE PETITIONS ARE NOT TIME-BARRED

The State contends that all of the Petitions other than Mosley's are time-barred.[4] The Court disagrees.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. *See*

---

[4] Accordingly, in this section, the references to "Petitions" and "Petitioners" relate solely to the Petitions filed by Petitioners Evans, Howell, Moses, and Jones, and do not refer to Mosley.

6

*Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling).

All of the Petitions were filed in September 2016 and are subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). None of the Petitioners alleges, and the Court cannot discern, any facts triggering the application of § 2244(d)(1)(B) or (C). Each Petitioner facing an untimeliness contention does, however, assert that he is entitled to a later starting date for AEDPA's limitations period – April 15, 2014 – under § 2244(d)(1)(D), because that is the date on which the State began to notify defendants in certain active cases about the OCME evidence misconduct.

In order to determine if the April 15, 2014 revelation of the OCME misconduct constitutes a newly discovered factual predicate warranting a later starting date for the limitations period under §2244(d)(1)(D), the Court must first distill the OCME misconduct argument to its core. The argument appears to be two-fold. First, Petitioners asserts a twist on the typical *Brady v. Maryland*, 373 U.S. 83 (1963), claim by alleging that the State's affirmative representation that it had fulfilled its *Brady v. Maryland* obligation when, in fact, it did not disclose the at-that-time undiscovered OCME misconduct, violated his constitutional rights and affected his ability to voluntarily enter a guilty plea. Second, each of the Petitioners contends that the Delaware state courts should have deemed his guilty plea involuntary under *Brady v. United States*, 397 U.S. 742, 748 (1970), due to the State's failure to disclose the *Brady v. Maryland* evidence, *i.e.*, the OCME misconduct. In short, each of the Petitioners asserts that his lack of knowledge about the OCME misconduct is vital to his habeas Claims because that lack of knowledge rendered his guilty plea involuntary and unknowing under *Brady v. United States*.

Pursuant to *Brady v. United States*, a guilty plea is considered involuntary if it is "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled

or unfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes)." *Brady*, 397 U.S. at 755. A violation of *Brady v. Maryland* occurs when the government fails to disclose evidence materially favorable to the accused, including both impeachment evidence and exculpatory evidence.[5] *See United States v. Bagley*, 473 U.S. 667, 676 (1985). For purposes of the inquiry under § 2244(d)(1)(D), whether or not the OCME misconduct affected, or could have affected, any Petitioner's decision to plead guilty depends on whether the drugs in his case were tested by the OCME and the results were provided to him prior to entering a plea. Therefore, in order to trigger a later starting date under § 2244(d)(1)(D) for this involuntary plea/*Brady v. Maryland* Claim, each Petitioner must show that (1) the drug evidence in his case was tested by the OCME and he received the results of the test before entering a plea; and (2) exercising due diligence, he could not have learned that the evidence in his case may have been part of the compromised drug evidence involved in the OCME scandal until April 15, 2014. For the following reasons, the Court concludes that each of the allegedly time-barred Petitioners has met this burden.

**Evans** - First, the OCME report concerning the drug evidence from one of the alleged drug transactions in this case was completed by forensic chemist Farnam Daneshgar on or before May 22, 2012, and Evans pled guilty on December 17, 2012. Second, facts sufficient to provide a basis for a good faith claim that state employees engaged in impermissible conduct were not available to defense counsel until April 15, 2014 when, as part of its *Brady v. Maryland* obligation, the State informed Evans and other defendants that all drug evidence housed at the lab was susceptible to

---

[5]A petitioner establishes a *Brady v. Maryland* violation by showing that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value: (2) the prosecution suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004).

8

compromise.[6]

**Howell** - First, the OCME report concerning the drug evidence from one of the alleged drug transactions in this case was completed by forensic chemist Patricia Phillips on December 19, 2013 and provided to Howell on January 7, 2014. Howell pled guilty on February 4, 2014. Second, as already noted with respect to Petitioner Evans above, facts sufficient to provide a basis for a good faith claim that state employees engaged in impermissible conduct were not available to defense counsel until April 15, 2014.

**Moses** - First, the OCME report concerning the drug evidence from one of the alleged drug transactions in this case was completed by forensic chemist Patricia Phillips on or before April 30, 2013 and provided to Moses on May 21, 2013. He pled guilty on October 8, 2013. Second, as already noted with respect to Petitioner Evans above, facts sufficient to provide a basis for a good faith claim that state employees engaged in impermissible conduct were not available to defense counsel until April 15, 2014.

**Jones** - First, Jones received the OCME report concerning the drug evidence on December 29, 2009, and he pled guilty on February 15, 2010. Second, as already noted with respect to Petitioner Evans above, facts sufficient to provide a basis for a good faith claim that state employees engaged in impermissible conduct were not available to defense counsel until April 15, 2014.

Given the circumstances with respect to each of the four Petitioners just discussed, the Court concludes that AEDPA's limitations period in these four cases began to run on April 15,

---

[6]Although the Delaware State Police ("DSP") began its investigation into compromised drug evidence on January 15, 2014, and the Deputy Attorney General's office informed defense counsel on February 21, 2014 that an investigation into the evidentiary practices at the OCME had started on February 20, 2014, the Court concurs with Petitioner's contention that sufficient facts to make the instant argument were not available until the State provided the relevant information on April 15, 2015. *See Biden: Investigation of State Medical Examiner's Drug Lab Reveals Systemic Failings, Urgent Need for Reform*, Dep't of Justice, Att'y Gen.'s Website (June 19, 2014), https://news.delaware.gov/2014/06/19/biden-investigation-of-state-medical-examiners-drug-lab-reveals-systemic-failings-urgent-need-for-reform/.

2014.[7] Accordingly, to comply with the one-year limitations period, these four Petitioners had to file their § 2254 petition by April 15, 2015. *See Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005) (holding that Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n.3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to anniversary method, *i.e.*, limitations period expires on anniversary of date it began to run).

   None of these four Petitioners filed his Petition by April 15, 2015. Evans and Howell filed their Petitions on September 19, 2016, while Moses and Jones filed theirs on September 21, 2016. Therefore, the four Petitions are time-barred unless the limitations period can be statutorily or equitably tolled. Here, the limitations period was statutorily tolled for each of the four Petitioners.

   Pursuant to § 2244(d)(2), a properly filed application for state collateral review tolls AEDPA's limitations period during the time the application is pending in the state courts, including any post-conviction appeals, provided that the application is filed during AEDPA's one-year limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 424-25 (3d Cir. 2000). However, the limitations period is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction

---

[7]The State relies on *Harmon v. Johnson*, 2016 WL 183899, at *3 (D. Del. Jan. 14, 2016), to support its argument that § 2254(d)(1)(D) is inapplicable and, therefore, cannot trigger a later starting date in Petitioner's case. The Court disagrees. Harmon argued that his conviction should be vacated because the State violated *Brady v. Maryland* by failing to disclose its knowledge of the OCME drug evidence scandal during his plea process and by waiting until long after his conviction in 2012 to disclose the tampering. *See Harmon*, 2016 WL 183899, at *2-3. However, since the drug evidence in *Harmon* was never sent to the OCME for testing, the court found that the revelation of the OCME scandal in 2014 could not have constituted a new factual predicate for Harmon's substantive *Brady v. Maryland* claim. *Id.* Here, by contrast, Petitioner argues that the alleged lack of knowledge of the OCME misconduct was material to his decision to plead guilty, thereby rendering his guilty plea involuntary under *Brady v. United States*. In addition, unlike in *Harmon*, the drug evidence in Petitioner's case was sent to the OCME for further testing after the initial field test, and Petitioner received a copy of the OCME report prior to pleading guilty. Given these circumstances, which are quite different than those presented in *Harmon*, the Court concludes that the revelation of the OCME scandal constitutes a new factual predicate.

motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

**Evans -** When the OPD filed Evans' second Rule 61 motion on May 8, 2014, twenty-three days of AEDPA's limitations period had already expired. The Rule 61 motion tolled the limitations from May 8, 2014 through October 12, 2015, the date on which the Delaware Supreme Court affirmed the Superior Court's denial of the motion. When the limitations clock started to run again on October 13, 2015, there were 342 days remaining in AEDPA's limitations period, so the last day of the limitations period was September 19, 2016. Since Evans filed his Petition on September 19, 2016, the Petition is timely. Therefore, the Court will proceed to review the Claims in Evans' Petition.

**Howell -** When the OPD filed Howell's second Rule 61 motion on May 7, 2014, twenty-two days of AEDPA's limitations period had already expired. The Rule 61 motion tolled the limitations from May 7, 2014 through October 12, 2015, the date on which the Delaware Supreme Court affirmed the Superior Court's denial of the motion. When the limitations clock started to run again on October 13, 2015, there were 343 days remaining in AEDPA's limitations period, so the last day of the limitations period was September 20, 2016. Since Howell filed his Petition on September 19, 2016, the Petition is timely. Therefore, the Court will proceed to review the Claims in Howell's Petition.

**Moses -** When the OPD filed Moses' Rule 61 motion on April 30, 2014, fifteen days of AEDPA's limitations period had already expired. The Rule 61 motion tolled the limitations from April 30, 2014 through December 9, 2015, the date on which the Delaware Supreme Court affirmed the Superior Court's denial of the motion. When the limitations clock started to run again on December 10, 2015, there were 350 days remaining in AEDPA's limitations period, so the last day of the limitations period was November 24, 2016. Since Moses filed his Petition on September 21, 2016, the Petition is timely. Therefore, the Court will proceed to review the Claims in Moses'

Petition.

**Jones -** When the OPD filed Jones' Rule 61 motion on June 20, 2014, sixty-six days of AEDPA's limitations period had already expired. The Rule 61 motion tolled the limitations from June 20, 2014 through December 9, 2015, the date on which the Delaware Supreme Court affirmed the Superior Court's denial of the motion. When the limitations clock started to run again on December 10, 2015, there were 299 days remaining in AEDPA's limitations period, so the last day of the limitations period was October 4, 2016. Since Jones filed his Petition on September 21 2016, the Petition is timely. Therefore, the Court will proceed to review the Claims in Jones' Petition.

## DISCUSSION

### A. Claim One: Unreasonable Application of *Brady v. United States.*

In Claim One, all five Petitioners – Evans, Howell, Mosley, Moses, and Jones – argue that the Delaware Supreme Court correctly identified *Brady v. United States* as "the overarching federal law governing the voluntariness of a guilty plea," but unreasonably applied that precedent by "unreasonably focus[ing] on [each Petitioner's] admission of guilt rather than on the voluntariness of that admission." Each Petitioner contends that the Delaware Supreme Court did not comply with *Brady*'s requirement that "all of the relevant circumstances surrounding" the plea must be considered when assessing if a Petitioner's plea was voluntary. *(See, e.g.,* C.A. No. 16-820 D.I. 9 at 20)[8]

Petitioner asserts that the Delaware Supreme Court erred by focusing on Petitioner's admission of guilt during the plea colloquy, contending that a "defendant's recitals on the record at

---

[8] Because the briefing is nearly-identical in all material respects with respect to the arguments presented on the merits of Claims One and Two, in the remainder of this Opinion the Court's citations are to the docket for Petitioner Howell, C.A. No. 16-820, unless otherwise noted. The Court has considered the briefs and other materials submitted in each of the five cases being addressed by this Opinion. For simplicity, and to avoid needless repetition, the Court will henceforth cite only to the Howell docket (again, unless otherwise noted) and may refer to "Petitioner" (instead of "Petitioners") to refer to all five Petitioners.

12

the time he entered his guilty plea do not foreclose proof at a later time that those themselves were involuntary," and "the assessment of such proof does not involve any question of guilt or innocence." (D.I. 9 at 20) Specifically, he alleges that,

> [i]n addition to the OCME misconduct itself, the State's failure to disclose that misconduct can render an otherwise voluntary plea involuntary. Each individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including police. This duty extends beyond police to any investigating agency. The state court previously found and the State conceded that evidence of the misconduct at [the] OCME was *Brady v. Maryland* material[⁹] in that it was relevant to impeachment. Even though, through no fault of the prosecutor, this evidence was not provided to [Petitioner], the State represented to him that it had satisfied its *Brady* obligation. Accordingly, the deceitful nature of the misconduct by a member of the prosecution team led to the prosecutor's misrepresentation to [Petitioner]. He was entitled to presume that prosecutors had discharged their official duties [] because they told him they had. Thus, assuming, *arguendo*, the State does not generally have a constitutional obligation to provide *Brady* material prior to the guilty plea, this Court must recognize, as does the United States Supreme Court, that the State does have a constitutional obligation not to mislead a defendant.

(D.I. 9 at 29-30)

---

⁹Petitioner's instant argument that the State's assertion it had fulfilled its *Brady v. Maryland* obligation constituted an affirmative misrepresentation for *Brady v. United States* purposes is a twist on the typical *Brady v. Maryland* argument. In many of the initial Rule 61 proceedings involving the OCME misconduct filed in the Delaware state courts, one of the primary arguments was that the State violated the defendants' rights under *Brady v. Maryland* by failing to disclose the ongoing misconduct at the OCME at the time their cases were pending. *See State v. Miller*, 2017 1969780, at *6 (Del. Super. Ct. May 11, 2017). The Delaware courts rejected this argument pursuant to *United States v. Ruiz*, 536 U.S. 622, 629 (2002), explaining that the State does not have a constitutional requirement to disclose material impeachment evidence prior to a defendant entering a guilty plea. *See Miller*, 2017 WL 1969780, at *7. The Court presumes that Petitioner's acknowledgement in this proceeding that the "State does not generally have a constitutional obligation to provide *Brady* material prior to the guilty plea" is due to the Delaware state courts' rejection of his "typical" *Brady v. Maryland* argument. However, Petitioner's argument that the State has a constitutional obligation not to mislead a defendant appears to be premised on a combination of principles derived from *Brady v. Maryland* and *Ferrara* (about to be discussed in the text).

Citing to the First Circuit's decision in *Ferrara v. United States*, 456 F.3d 278 (1st Cir. 2006),[10] Petitioner asserts that the OCME misconduct rendered his guilty plea involuntary because it was egregious, antedated Petitioner's plea, is imputed to the State, and was material to Petitioner's choice to plead guilty. After stating that "*Brady v. United States* . . . requires an assessment of factors that speak to the fairness with which the plea agreement was secured," and noting that "no specific framework for this assessment is required," Petitioner "urges [the] Court to follow that which was applied in" *Ferrara*. (D.I. 13 at 11) In *Ferrara*, the First Circuit held that a defendant may "collaterally attack his sentence on the ground that his guilty plea was not knowing or voluntary if his claim is based on evidence not available to him at the time of the plea," without distinguishing between evidence that is newly discovered and evidence that was withheld as a result of a *Brady v. Maryland* violation. *See* 456 F.3d at 289. The *Ferrara* Court established a two-pronged test for determining if a defendant has a right to rescind his guilty plea because of newly discovered government misconduct: (1) egregious impermissible government misconduct antedated the entry of the plea; and (2) the misconduct influenced the defendant's decision to plead guilty or, in other words, the misconduct was material to that choice. *See id.* at 290.

Petitioner presented essentially the same argument to the Superior Court in his Rule 61 motion. The Superior Court denied the motion after finding that Petitioner had not established that his guilty plea was involuntary because he admitted he was guilty of the drug charge when he entered his plea. The Superior Court also found that the OCME issues did not warrant a finding of presumptive involuntariness with respect to the plea. *See Absher*, 2014 WL 7010788, at *3.

---

[10]The United States District Court for the District of Massachusetts has applied *Ferrara*'s two-step approach in numerous proceedings brought under 28 U.S.C. § 2255, in which the movants sought to revoke their guilty pleas based on the misconduct of forensic scientist Annie Dookhan. In those cases, the movants generally sought to vacate their sentences by arguing that their guilty pleas were obtained in violation "of the Due Process Clause of the Fifth Amendment because of the government's failure to disclose the full range of Dookhan's malfeasance." *United States v. Wilkins*, 943 F. Supp. 2d 248, 254 (D. Mass. 2013).

The Delaware Supreme Court affirmed the Superior Court's decision, opining that

Petitioner's lack of knowledge about the OCME's mishandling of evidence did not invalidate his

plea because he freely admitted his guilt when he entered the plea. *See Aricidiacono*, 125 A.3d at 678-

79. The Delaware Supreme Court rejected Petitioner's due process argument that his plea was

involuntary under *Brady v. United States*, explaining:

> [T]he defendants here submitted no evidence to suggest a natural
> inference that any misconduct at the OCME (or lack of knowledge of
> that conduct) coerced or otherwise induced the defendants to falsely
> plead guilty.
>
> Tellingly, the defendants do not in any way argue that the State knew
> about the problems at the OCME when they pled guilty and failed to
> disclose those problems; that the State engaged in any coercive or
> improper behavior to procure their pleas; or that any of the
> defendants in fact gave a false admission. The last point bears
> reiteration: not one of the defendants argues that she was not in fact
> not in possession of illegal narcotics and that her plea was false.
> Rather the suggestion is solely that the defendants would not have
> pled or would have gotten better deals if they had known of the
> problems at the OCME.

*Aricidiacono*, 125 A.3d at 679.

The Delaware Supreme Court also rejected the argument – which was premised on the First

Circuit's decision in *Ferrara* – that the defendants' pleas were rendered involuntary due to the

"egregious" OCME misconduct that antedated their pleas, because none of the defendants asserted

that they "were not in fact telling the truth when they freely admitted their factual guilt."

*Aricidiacono*, 125 A.3d at 680. Describing *Ferrara*'s "egregious misconduct" rationale as a "gloss on

*Brady v. United States*," the Delaware Supreme Court refused to "embrace" the defendants' "egregious

misconduct" argument. Nevertheless, the Delaware Supreme Court noted that "even if there was

conduct at the OCME that could be said to be egregious, we have determined, in accordance with

our prior reasoning in *Ira Brown v. State* and *Anzara Brown v. State*, that this conduct did not materially

affect any of the pleas." *Aricidiacono*, 125 A.3d at 680 n.24. The Delaware Supreme Court opined:

15

> Put simply, the defendants were unable to identify any equitable
> reason why they should not be held to their pleas. We have no doubt
> that the defendants and their counsel wish they had known of the
> problems at the OCME when the defendants voluntarily admitted
> their guilt and used their acceptance of responsibility to get charges
> dropped and secure sentences far below the statutory maximum. It
> may be the case that knowing about the OCME problems would
> have given the defendants more bargaining leverage. But that
> possibility is not a basis for concluding that the defendants were
> unfairly convicted after a voluntary plea. Each of these defendants
> had every opportunity to claim that she was in fact not guilty, to
> contend that she did not possess illegal drugs, and to go to trial. To
> this day, not one advances the contention that she was in fact
> innocent.

*Aricidiacono*, 125 A.3d at 681.

Since the Delaware Supreme Court denied Petitioner's *Brady v. United States* claim as

meritless, habeas relief will only be available if the Delaware Supreme Court's decision was either

contrary to, or an unreasonable application of, clearly established federal law. However, given

Petitioner's concession that the Delaware state courts correctly identified *Brady v. United States* as the

governing precedent, the Court will proceed directly to the "unreasonable application" prong of the

§ 2254(d)(1) inquiry.

As an initial matter, the Court is not persuaded by Petitioner's argument that the Delaware

Supreme Court unreasonably applied clearly established federal law by refusing to incorporate

*Ferrara*'s approach of treating "egregious government misconduct" preceding the entry of the plea as

one of *Brady v. United States*' enumerated "relevant circumstances" – a government misrepresentation

– to be considered when assessing the voluntariness of a guilty plea. Nor is the Court persuaded to

incorporate *Ferrara*'s approach in its analysis in this case.

First, *Ferrara* does not constitute "clearly established federal law" because it is not a decision

issued by the United States Supreme Court. Second, the Court has not uncovered any Supreme

Court precedent adopting *Ferrara*'s rationale of equating "egregious undisclosed government

misconduct" with a misrepresentation capable of rendering a guilty plea involuntary.[11]  Finally, while

Petitioner correctly states that the Third Circuit has cited *Ferrara* in a footnote,[12] the Court has not

found any Third Circuit case law mirroring *Ferrara*'s holding or explicitly adopting its reasoning.

Indeed, at least one federal district court has criticized *Ferrara* as an overly "expansive interpretation

of the relevant language from *Brady v. United State*."[13]  *Hasbajrami v. United States*, 2014 WL 4954596,

at *3 (E.D.N.Y. Oct. 2, 2014).

Even if Petitioner's argument is not considered to be premised specifically on *Ferrara*, but

rather on general due process principles established in *Brady v. United States*, he is not entitled to

habeas relief.  In *Brady v. United States*, the Supreme Court determined that a guilty plea is not

rendered invalid merely because it is entered to avoid a harsher sentence, explaining:

> A plea of guilty entered by one fully aware of the direct
> consequences, including the actual value of any commitments made
> to him by the court, prosecutor, or his own counsel, must stand
> unless induced by threats (or promises to discontinue improper
> harassment), misrepresentation (including unfulfilled or unfulfillable
> promises), or perhaps by promises that are by their nature improper

---

[11]In addition to the reasons set forth in the text of this Opinion, the following three circumstances demonstrate why the *Ferrara* decision has limited applicability here.  First, the defendant in *Ferrara* asserted he was actually innocent of the charge to which he pled guilty; Petitioner has not asserted his factual innocence.  *See Ferrara*, 384 F. Supp. 2d 384, 388 (D. Mass. 2005).  Second, the prosecutor in *Ferrara* was actively involved in witness manipulation and suppression of affirmative evidence directly related to the defendant's innocence; here, the State was not aware of the OCME misconduct when Petitioner entered his plea and did not actively suppress that information.  *See Ferrara*, 456 F.3d at 291 ("outrageous conduct" in *Ferrara* consisted of manipulating witness, and then "represent[ing] to the court and the defense that the witness was going to confirm [a] story" inculpating defendant in murder plot, when in fact witness had provided government with affirmative evidence of defendant's innocence.).  Finally, the evidence in *Ferrara* was exculpatory because it directly implicated the defendant's innocence; as explained in the text of the Opinion, the OCME misconduct constituted impeachment evidence.  *See Ferrara*, 456 F.3d at 292.

[12]*See United States v. Piper*, 525 F. App'x 205, 209 n.5 (3d Cir. 2013).

[13] Interestingly, "[o]f the federal courts to have addressed post-conviction petitions under *Brady* and *Ferrara* in the wake of the Dookhan scandal, not one has vacated a guilty plea."  *Castro v. United States*, 272 F. Supp. 3d 268, 274 (D. Mass. 2017).

17

> as having no proper relationship to the prosecutor's business (*e.g.* bribes).

*Brady*, 397 U.S. at 755; *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (explaining a defendant may challenge a conviction based on guilty plea on ground that plea was not "voluntary and intelligent"); *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (noting that "longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative choices of action open to the defendant"). The Supreme Court has noted that a plea is involuntary if it is induced by "actual or threatened physical harm or by mental coercion overbearing the will of the defendant," or if the defendant is so "gripped" by fear or hope of leniency that he cannot "rationally weigh the advantages of going to trial against the advantages of pleading guilty." *Brady*, 397 U.S. at 750. However, a plea is not involuntary "whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." *Id.* at 751.

Significantly, "the voluntariness of [a defendant's] plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749. While the Supreme Court has not articulated an exhaustive list of the "relevant circumstances" to be considered when assessing the voluntariness of a plea, the Supreme Court has noted that a plea is not unintelligent just because later events prove that going to trial may have been a wiser choice:

> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he

18

> discovers long after the plea has been accepted that his calculus
> misapprehended the quality of the State's case or the likely penalties
> attached to alternative courses of action. More particularly, absent
> misrepresentation or other impermissible conduct by state agents, a
> voluntary plea of guilty intelligently made in the light of the then
> applicable law does not become vulnerable because later judicial
> decisions indicate that the plea rested on a faulty premise.

*Brady*, 397 U.S. at 756–57.

The Supreme Court has reaffirmed this principle while underscoring the inherent risk of

entering a guilty plea, stating

> the decision to plead guilty before the evidence is in frequently
> involves the making of difficult judgments. All the pertinent facts
> normally cannot be known unless witnesses are examined and cross-
> examined in court. Even then the truth will often be in dispute. In
> the face of unavoidable uncertainty, the defendant and his counsel
> must make their best judgment as to the weight of the State's case . . .
> Waiving trial entails the inherent risk that the good-faith evaluations
> of a reasonably competent attorney will turn out to be mistaken
> either as to the facts or as to what a court's judgment might be on
> given facts.

*McMann v. Richardson*, 397 U.S. 759, 769-70 (1970).

The Supreme Court has also advised that,

> [t]he rule that a plea must be intelligently made to be valid does not
> require that plea be vulnerable to later attack if the defendant did not
> correctly assess every relevant factor entering into his decision. A
> defendant is not entitled to withdraw his plea merely because he
> discovers long after the plea has been accepted that his calculus
> misapprehended the quality of the State's case.

*Brady*, 397 U.S. at 757. In other words, "the Constitution, in respect to a defendant's awareness of

relevant circumstances, does not require ***complete*** knowledge of the relevant circumstances, but

permits a court to accept a guilty plea . . . despite various forms of misapprehension under which a

defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 630 (2002) (emphasis added).

Finally, it is well-settled that a petitioner challenging the voluntary nature of his plea on

habeas review faces a heavy burden. *See Zilich v. Reid*, 36 F.3d 317, 320 (3d Cir. 1994). The

"representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Significantly, there is

> no requirement in the Constitution that defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the state would have had a weaker case than the defendant had thought or that he maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.

*Brady*, 397 U.S. at 757.

After reviewing the Delaware Supreme Court's decision within the aforementioned legal framework, the Court concludes that the Delaware Supreme Court did not unreasonably apply *Brady v. United States* and its progeny by holding that Petitioner's lack of knowledge about the OCME misconduct did not render his guilty plea involuntary.[14] Instead, the Delaware Supreme Court considered the "relevant circumstances" required by *Brady v. United States* when assessing the voluntariness of Petitioner's plea.

For instance, the Delaware Supreme Court considered the substantial benefit Petitioners derived from pleading guilty, as demonstrated by its statement that, "the State notes the substantial benefits the defendants obtained by the plea process, with most defendants obtaining a plea to a greatly reduced set of charges and to sentences far below that which they could have received had they gone to trial." *Aricidiacono*, 125 A.3d at 680.

---

[14] In this proceeding, Petitioner states that "his present claim does not contradict the statements he made during his plea colloquy," and he also states that he is not contradicting "any assertion made during the plea colloquy that the attorney did so advise him [of the rights he was waiving by entering the plea]." (D.I. 7 at 21 & n.82) Given Petitioner's concession, the Court accepts as correct the Delaware Supreme Court's determination that Petitioner freely admitted his guilt during the plea colloquy, thereby rendering an independent analysis of Petitioner's plea colloquy under *Blackledge* unnecessary.

Here, in particular, by pleading guilty, Petitioner Evans reduced his potential overall period of incarceration by three years, and had additional serious charges dismissed.[15] Petitioner Howell faced a potential life sentence but, by entering into a plea agreement, the State dropped the remaining charges against him, and capped its sentence recommendation to twelve years.[16] The benefits of pleading guilty may be less visible for other of the Petitioners, but this does not render the Supreme Court's application of *Brady* unreasonable.

Additionally, the Delaware Supreme Court stated it was "adher[ing]" to its prior decision in *Brewer v. State* in rejecting Petitioner's argument.[17] In *Brewer*, the Delaware Supreme Court opined:

> In his guilty plea colloquy, Brewer affirmed that he was "guilty of possession with intent to deliver cocaine." At no point has Brewer argued that he was actually innocent. As we emphasized in affirming the denial of Brewer's first motion for postconviction relief, Brewer's guilty plea was knowing and voluntary. Brewer is therefore bound by the statements he made to the Superior Court before his plea was

---

[15]Evans was charged with delivery of cocaine and possession of a deadly weapon by a person prohibited ("PDWBPP"), along with additional charges of receiving a stolen firearm two counts of drug dealing tampering with evidence, and PDP. (D.I. 15-1 at 11; D.I. 15-7 at 2) Those charges also caused Evans to be in violation of his probation, for which he was sentenced to eight years. Evans entered a plea agreement whereby he would plead guilty to delivery of cocaine and PDWBPP, in exchange for which the State would dismiss the additional charges. (D.I 15-1 at 11) Evans' potential maximum sentence for his two new charges was an additional thirty-three years: for the delivery of cocaine, there was a minimum of two years up to a maximum of twenty-five years, and for the PDWBPP, there was a five year minimum with an eight year maximum. (D.I. 15-7 at 7-8) In exchange for pleading guilty, the State recommended twenty-five years at Level V for delivery of cocaine charge, to be suspended after three years, followed by home confinement. (D.I. 15-7 at 7-8) The Superior Court sentenced him to twenty-five years, suspended after three years, with the balance suspended for six months of home confinement (Level IV), followed by eighteen months at Level III. (D.I. 15-7 at 22) For the PDWBPP charge, the State recommended five years, and the Superior Court sentenced him to five years. (*Id.* at 8) In short, by pleading guilty, Evans avoided an additional three years of imprisonment.

[16]Petitioner Howell was charged with aggravated drug dealing heroin in a tier two quantity, aggravated drug dealing heroin, aggravated possession of heroin, second degree conspiracy, and possession of drug paraphernalia. (C.A. No. 16-820 D.I. 12 at 1) He pled guilty to drug dealing tier two heroin, and faced a maximum sentence of life because he was a habitual offender. (C.A. No. 16-820 D.I. 16-14 at 2) In exchange for pleading guilty, the State recommended a sentence of twelve years and *nolle prossed* the remaining charges. (C.A. No. 16-820 D.I. 16-14 at 2)

[17]*Aricidiacono*, 125 A.3d at 680.

21

accepted and he is prevented from reopening his case to make claims that do not address his guilt and involve impeachment evidence that would only be relevant at trial.

Brewer's reliance on decisions based upon language in *Brady v. United States* does not change this result. In *Brady*, the United States Supreme Court held that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." The Court clarified that "[o]f course, the agents of the State may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant." ***As long as the defendant can "with the help of counsel, rationally weigh the advantages of going to trial against the advantages of pleading guilty," the Court determined there is no constitutional cause for concern.***

***Brewer has failed to allege any improper coercion that undermined his ability to rationally weigh the advantages or disadvantages of trial. Nothing in Brewer's opening brief suggests that he was strong-armed by State agents. Instead, Brewer claims that the positive OCME drug results were a significant factor in his decision to plead guilty and that he would not have pled guilty if he had known of the misconduct at the OCME. Brewer fails, however, to tie any of the OCME misconduct to the facts of his case. Brewer has not shown that his guilty plea was the result of improper coercion and does not claim to be actually innocent.***

*Brewer v. State*, 119 A.3d 42 (Table), 2015 WL 4606541, at \*2-\*3 (Del. July 30, 2015) (emphasis added).

The *Brewer* excerpt demonstrates that, as clearly mandated by *Brady v. United States*, the Delaware Supreme Court considered if Petitioner entered the plea upon the advice of counsel. The excerpt also demonstrates that the Delaware Supreme Court considered that the unrelated general OCME misconduct did not amount to improper coercion, nor did it affect Petitioner's awareness of the direct consequences of pleading guilty. The Delaware Supreme Court explained that "the defendants here submitted no evidence to suggest a natural inference that any misconduct at the OCME (or lack of knowledge of that conduct) coerced or otherwise induced the defendants to falsely plead guilty." *Aricidiacono*, 125 A.3d at 679. As the Court explains in its discussion

regarding Claim Two, the Delaware Supreme Court reasonably determined the facts by concluding that Petitioner failed to demonstrate that his case was tainted by the OCME misconduct. Consequently, the Delaware Supreme Court's refusal to issue a *per se* determination that the general existence of OCME misconduct was sufficient to render Petitioner's guilty plea involuntary, without proof that there was any actual OCME misconduct with respect to the evidence in Petitioner's case, did not violate *Brady v. United States*.

Similarly, the Delaware Supreme Court did not violate *Brady v. United States* by placing significance on Petitioner's admission of guilt during the plea colloquy, because it considered this fact in conjunction with Petitioner's failure to assert his factual innocence during or after the plea. An admission of guilt "is entitled to significant (albeit not dispositive) weight when, as now, [a defendant] seeks to vacate that plea through a collateral attack." *Wilkins*, 754 F.3d at 30. "Such an admission is especially compelling because [he] neither attempts to explain it away nor makes any assertion of factual innocence." *Id.*[18]

Given Petitioner's failure to demonstrate a link between the misconduct and his case, Petitioner's unawareness of the unrelated general OCME misconduct only amounted to one of the "various forms of misapprehension under which a defendant might labor."[19] *Ruiz*, 536 U.S. at 630.

---

[18] Petitioner Mosely did not receive an OCME report before pleading guilty. The fact that he entered a guilty plea without first viewing any test results provides additional support for weighing his admission of guilt more heavily.

[19] Indeed, Petitioner could have gone to trial, or sought permission to enter a plea of *nolo contendere*, which would have permitted him to accept punishment for the charged offense without admitting his guilt. *See* Del. Super. Ct. Crim. R. 11(2)(b) ("A defendant may plead nolo contendere or guilty without admitting the essential facts constituting the offense charged with the consent of the court. Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice."); *see also North Carolina v. Alford*, 400 U.S. 25, 37 (1970) ("[W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."). Petitioners did not do so, and the Delaware

As Petitioner concedes, and the body of Delaware caselaw concerning the OCME misconduct demonstrates, the OCME investigation constitutes impeachment evidence that would only be useful if Petitioner had decided to go to trial. *See Ira Brown*, 108 A.3d at 1206-07. In *Ruiz*, the United States Supreme Court specifically held that the government is not constitutionally required to disclose material impeachment evidence prior to entering into a plea agreement with a criminal defendant. *See Ruiz*, 536 U.S. at 633. The *Ruiz* Court explained:

> It is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant. The degree of help that impeachment information can provide will depend upon the defendant's own independent knowledge of the prosecution's potential case – a matter that the Constitution does not require prosecutors to disclose.

*Ruiz*, 536 U.S. at 629. The Supreme Court also recently reaffirmed that "a guilty plea makes [case-related constitutional defects that occurred prior to the entry of the guilty plea] irrelevant to the constitutional validity of the conviction," "[b]ecause the defendant has admitted the charges against him." *Class v. United States*, 138 S.Ct. 798, 805-06 (2018).

If unknown non-exculpatory conduct at the OCME was not material to a defendant's decision to plead guilty, that same non-exculpatory misconduct cannot provide a basis for rendering a defendant's counseled decision to enter a guilty plea involuntary, especially when that defendant participated in a plea colloquy in open court, freely acknowledged his guilt, and has not asserted his factual innocence. Although knowledge of the OCME misconduct would have provided Petitioner with "more bargaining leverage," it cannot be said that the lack of that knowledge rendered his guilty plea involuntary. Rather, Petitioner's argument amounts only to a miscalculation of the strength of the State's case.

---

Superior Court was entitled to rely on their solemn admission that they committed the acts alleged by the State in assessing the voluntariness of their guilty pleas.

24

In sum, the Court concludes that the Delaware Supreme Court did not unreasonably apply *Brady v. United States* in holding that Petitioner's guilty plea was not rendered involuntary due to his lack of knowledge about the OCME misconduct. Accordingly, the Court will deny Claim One for failing to satisfy § 2254(d)(1).[20]

### B. Claim Two: Unreasonable Finding of Fact

In affirming the Superior Court's denial of Petitioner's Rule 61 motion, the Delaware Supreme Court made the following observations about the misconduct at the OCME:

> In 2014 an investigation by the Delaware State Police and the Department of Justice revealed that some OCME employees had stolen drug evidence stored at the OCME due in large part to flawed oversight and security. To date, those problems, although including substantial evidence of sloppiness and allegations of "drylabbing," do not in any way involve evidence-planting. To the contrary, much of the uncovered misconduct seemed to be inspired by the reality that

---

[20] While all five Petitioners present the same substantive *Brady* argument, Moses and Jones assert an additional argument for relief, namely, that the Delaware Supreme Court unreasonably applied clearly established federal law by citing to *Aricidiacono v. State*, 125 A.3d 677 (Del. 2015), rather than directly to *Brady v. United States*. The Court rejects this argument. The Delaware Supreme Court's *Aricidiacono* decision properly cites and articulates *Brady v. United States*' standard for determining the voluntariness of guilty pleas. *See Aricidiacono*, 125 A.3d at 679. By citing and applying *Aricidiacono* when denying the instant Claim, the Delaware Supreme Court appropriately relied on Delaware caselaw articulating the proper federal standard applicable to Petitioner's Claim. *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008) (finding that Supreme Court of Pennsylvania's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases which articulated proper standard derived from Supreme Court precedent). Thus, the issue as to whether the Delaware Supreme Court unreasonably applied *Brady v. United States* in holding that Petitioner's plea was not rendered involuntary by his lack of knowledge about, and the State's late disclosure of, the OCME misconduct is properly before the Court.

In addition, the Court rejects the State's argument that Jones' Petition should be denied as procedurally barred due to the Delaware Supreme Court's alternative dismissal of his *Brady* argument under Rule 61(i)(1). *Banks v. State*, 129 A.3d 881 (Table), 2015 WL 8481972, at *1 (Del. Dec. 9, 2015). Although an alternative decision on the merits does not prevent a federal habeas court from relying on a state court's enforcement of a state procedural bar, given the significance of the issue involved in this case, the Court will exercise prudence and review Jones' Claims under § 2254(d). *See, e.g., Wyn v. Pierce*, 2016 WL 6462132, at *7 (D. Del. Oct. 27, 2016).

Given the Court's conclusion that each Petitioner's lack of knowledge about the OCME misconduct did not "induce" him to plead guilty, the Court will refrain from addressing any other issues raised in the briefing but (given the Court's conclusions) not necessary to the outcome.

> the evidence seized from defendants in fact involved illegal narcotics, and the temptation this provided to certain employees to steal some of that evidence for their personal use and for resale. Those problems have now been discussed in several judicial opinions, and in publicly available investigative reports.

*Aricidiacono*, 125 A.3d at 677-78. The Delaware Supreme Court held that "the poor evidence-handling practices at the OCME, however regrettable," did not entitle defendants who had freely admitted their guilt when pleading guilty to relief. *Id.* at 678-79. The Delaware Supreme Court then stated that, even if it assumed that the conduct at the OCME amounted to egregious government misconduct, "this conduct did not materially affect any of the pleas." *Id.* at 680 n.24.

In Claim Two, Petitioners contend that the Delaware Supreme Court rested "its decision on an unreasonable determination of facts regarding" the OCME misconduct "in light of the evidence presented to it." (C.A. No. 16-818 D.I. 7 at 7)[21] Each Petitioner asserts that the "state court's unreasonable findings minimized the OCME misconduct and belittled the unrealistic burden of proof it placed on [Petitioner]," and also asserts that the Delaware Supreme Court ignored relevant circumstances specific to his case. (D.I. 7 at 22-27) Petitioner's true complaint appears to be what he terms "the state court's misguided fixation on [Petitioner's] admission of guilt rather than on the voluntariness of that admission." (D.I. 13 at 12) Petitioner's statement that "[i]t is inconceivable that the facts which the state court ignored, belittled or misconstrued are not relevant to a finding that, but for the State's failure to disclose evidence of government misconduct, there is a reasonable probability that [Petitioner] would not have pled guilty" (D.I. 13 at 13), also appears to challenge the Delaware state courts' refusal to characterize the OCME misconduct as "egregious undisclosed

---

[21] As with the discussion above with respect to Count One, here with respect to Count Two the Court principally relies on the briefing filed by and in connection with just one of the five Petitioners. This time it is the briefing filed in the case of Petitioner Evans, C.A. No. 16-818. Unless otherwise noted, all record citations in this section are to the docket in Evans' case. Again, for simplicity, the Court will mostly reference "Petitioner" in the singular, but all such references actually refer to all five Petitioners.

government misconduct" in its *Brady v. United States* analysis. To the extent this portrayal is an accurate summary of Petitioner's argument in Claim Two, the Court has already rejected the instant argument in its discussion of Claim One. Moreover, as the State aptly asserts, this "claim fails for the simple reason that the Delaware court's reasonable application of federal law rendered unnecessary any need to delve further into OCME employee misconduct or the integrity of the drug evidence in [Petitioner's] case." (D.I. 9 at 19)

Even if Petitioner's factual challenge is more than a rehashing of Claim One, it is unavailing. Petitioner appears to be dissatisfied with the state courts' description of the specific instances of OCME misconduct, as indicated in his chart depicting "State Court's Unreasonable Findings" versus "Actual Facts." (D.I. 7 at 24-27) He asserts that the state courts' findings "either contradicted or understated significant facts in the record." (D.I. 7 at 24) In short, Petitioner appears to contend that the Delaware Supreme Court unreasonably determined there was an insufficient link between the OCME misconduct and his case.

Since Claim Two challenges the factual basis of the Delaware Supreme Court's decision, the relevant inquiry is whether that decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In making this determination, the Court must presume that the Delaware Supreme Court's factual findings are correct unless rebutted by clear and convincing evidence. *See 2*8 U.S.C. § 2254(e)(1).

After reviewing Petitioners' arguments in context with the record, the Court concludes that each Petitioner has failed to provide clear and convincing evidence rebutting the Delaware Supreme Court's factual determination that each Petitioner failed to demonstrate a sufficient link between the general OCME misconduct and his case.

**Evans -** Farnam Daneshgar was the chemist who tested the drugs in Evans' case. Evans asserts that Daneshgar's credibility was compromised because there was speculation that Daneshgar

may have engaged in drylabbing in the 1990s, and that witnesses alleged Daneshgar had engaged in drylabbing more recently. (D.I. 7 at 10-11, 33) However disturbing these allegations may be, these assertions do not demonstrate that Daneshgar engaged in any misconduct with respect to the drugs in Evans' case.[22]

Moreover, Evans entered his plea after already seeing the State's evidence at his violation of probation hearing. Even though Petitioner was originally charged with two counts of delivering cocaine based on two separate transactions, he entered his plea in December 2012 without receiving an OCME report on one of the two cocaine samples. The fact that Evans was willing to plead on the basis of the test results for just one of two samples indicates his awareness of the substance of the drugs and, more importantly, suggests how little importance he placed on the OCME test results in deciding whether to plead guilty. Finally, Evans does not claim he is factually innocent of the drug charges to which he pled guilty.

**Howell -** Patricia Phillips was the chemist who tested the evidence in Howell's case. Howell asserts that Phillips' credibility was compromised because there were "three incidents of evidence mishandling leading to her suspension and resignation occurred in 2015." *State v. Miller*, 2017 WL 1969780, at *8 (Del. Super. Ct. May 11, 2017). However, since the evidence in Howell's case was tested in 2013, Phillips' alleged misconduct in 2015 does not demonstrate that she engaged in misconduct in his case. In addition, the drugs obtained by the police all field-tested positive for

---

[22]In his Rule 61 motion, Evans alleged: "The record reveals that there were suspicions in 1990, and possibly earlier, that Daneshgar falsely declared test results used by the State to obtain convictions. He left his employment at OCME amidst those suspicions. However, despite knowledge of those suspicions, the OCME rehired Daneshgar. Not surprisingly, there were suspicions that Daneshgar falsely declared test results after he was rehired." (D.I. 16-1 at 31-32) In his Petition in this proceeding, Evans states that Daneshgar's "initial employment at the lab ended in 1990 after allegations that he was 'drylabbing,' a process where a chemist declares the composition of a substance 'without performing the analytical testing to produce that result. Nonetheless, the lab rehired him several years later," supposedly in 2006. (D.I. 7 at 11) Evans also details generalized misconduct by other lab employees and questionable lab practices. (D.I. 7 at 10-18) Nothing in the Petition, however, describes any misconduct that occurred in Evans' own case.

heroin, and the buyer of the heroin told the police in a post-*Miranda* statement that he bought the heroin from Petitioner for $160.00. (C.A. No. 16-820 D.I. 12 at 3)

**Mosley -** Patricia Phillips was the chemist who tested the evidence in Moses' case. The discussion provided just above with respect to Howell's contentions regarding Phillips apply equally here. As with the evidence in Howell's case, the evidence in Moses' case was tested in 2014, so Phillips' alleged misconduct in 2015 does not demonstrate that she engaged in misconduct in his case. In addition, the fact that the drugs obtained by the police field-tested positive for the presence of heroin supports the reliability of Phillips' test result. (C.A. No. 16-841 D.I. 11 at 3) Further, that Petitioner entered his plea before receiving the OCME report (C.A. No. D.I. 2 at 6) suggests how little importance Petitioner placed on the OCME test results in deciding whether to plead guilty.

**Moses -** Patricia Phillips was the chemist who tested the evidence in Moses' case. The discussion provided just above with respect to Howell's contentions regarding Phillips apply equally here. As with the evidence in Howell's case, the evidence in Moses' case was tested in 2013, so Phillips' alleged misconduct in 2015 does not demonstrate that she engaged in misconduct in his case. In addition, the drugs obtained by the police in Moses' case all field-tested positive for heroin, and the buyer of the heroin told the police in a post-*Miranda* statement that he bought the heroin from Moses. (C.A. No. 16-841 D.I. 12 at 3)

**Jones -** Farnam Daneshgar was the chemist who tested the drugs in Jones' case. The discussion provided just above with respect to Evans' contentions regarding Daneshgar apply equally here. In addition, the drugs field-tested positive for cocaine. (C.A. No. 16-849 D.I. 10 at 3)

## EVIDENTIARY HEARING

All Petitioners except for Mosley request an evidentiary hearing. Having determined that the Claims do not warrant relief under § 2254(d)(1) and (2), the Court will deny Petitioners' requests for an evidentiary hearing and additional discovery. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)

("Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into those standards in deciding whether an evidentiary hearing is appropriate.").

## CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioners' habeas claims do not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the reasons discussed, Petitioners' Applications For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 are **DENIED**. An appropriate Order will be entered.